UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INGE T. ANDERSON,

        Plaintiff,

    v.

SCOTT ALAN ANDERSON,

        Defendant.

NO. C17-0891RSL

DECISION REGARDING
EQUITABLE CLAIM FOR
SPECIFIC PERFORMANCE

In June 2011, defendant Scott Anderson signed what is known as an I-864 Affidavit of Support in favor of plaintiff Inge Anderson. Plaintiff is from the Netherlands and, as part of her application for an immigrant visa and/or to become a lawful permanent resident of the United States, she had to show that she had enough resources available to her that it was not likely that she would become a public charge. One way to make that showing was to have a sponsor in the United States promise to provide plaintiff with whatever support is necessary to maintain her at an income that is at least 100% of the federal poverty level.[1] The I-864 Affidavit defendant signed contains that promise. Although the I-864 Affidavit is a contract between defendant and the United States, plaintiff is the intended beneficiary of the contract and has the right to enforce

---

[1] The support obligation under and I-864 is generally 125% of the federal poverty guidelines, but drops to 100% if the sponsor is on active duty in the U.S. Armed Forces and married to the intending immigrant.

DECISION REGARDING EQUITABLE
CLAIM FOR SPECIFIC PERFORMANCE - 1

the promises contained therein. A jury has considered plaintiff's claim that defendant breached his support obligations under the Affidavit of Support from June 2011 to the time of trial, finding that plaintiff was owed $2,868 for 2016 and $7,286 for 2019.² The Court now considers plaintiff's claim for specific performance from the date of the jury's verdict forward.

Having reviewed the record in this matter, having heard the evidence and arguments offered at trial, having considered the jury's verdict, and having reviewed the parties' supplemental submissions regarding specific performance,³ the Court finds as follows:

The Form I-864 Affidavit of Support is a valid contract that was intended to benefit plaintiff and which she is entitled to enforce. The obligations imposed by the I-864 Affidavit are continuing and were not terminated as a result of the parties' separation or divorce. Defendant Scott Anderson therefore remains obligated to provide plaintiff Inge Anderson whatever support is necessary to maintain plaintiff at an income that is not less than 100% of the federal poverty guidelines for a one-person household in any given year. This obligation will continue unless and until one of the six events that terminate the I-864 contract occurs.⁴

The Court rejects plaintiff's attempts to rewrite the contract and impose upon defendant

---

² The jury also considered and rejected plaintiff's claim of intentional infliction of emotional distress.

³ Plaintiff's motion for leave to file an overlength memorandum (Dkt. # 162) is GRANTED.

⁴ Defendant's obligations under the I-864 Affidavit will end if plaintiff (A) becomes a U.S. citizen; (B) has worked, or can receive credit for, 40 quarters of coverage under the Social Security Act; (C) no longer has lawful permanent resident status and has departed the United States; (D) is subject to removal but applies for and obtains, in removal proceedings, a new grant of adjustment of status based on a new affidavit of support if one is required; or (E) dies. Future support obligations also end if defendant dies.

DECISION REGARDING EQUITABLE
CLAIM FOR SPECIFIC PERFORMANCE - 2

an obligation to ensure that plaintiff is ineligible for public assistance. Defendant's contractual obligations are clear: he must guarantee that plaintiff's income does not drop below the federal poverty guideline. Plaintiff persuasively argues that the federal poverty level is too low to ensure that she does not become a public charge, but the federal poverty level is the benchmark the United States required defendant to guarantee when he signed Form I-864 in June 2011. There is no plausible reading of the contract that would obligate defendant to affirmatively keep plaintiff from becoming a public charge, to pay any amount above the federal poverty guideline, to ensure that the recent changes in immigration policy do not adversely affect plaintiff, or to guarantee that she has private health insurance, her choice of housing, cost-of-living adjustments, utilities, and/or internet access.

Under the contract, defendant's obligation is to ensure that plaintiff has a specified minimum annual income. The Court finds, however, that in fashioning a remedy for plaintiff's equitable claim, the annual amount specified in the federal poverty guidelines should be prorated so that defendant makes manageable monthly payments, as necessary, that allow plaintiff to pay her on-going, monthly expenses. Calculating the exact amount owed during any given month is challenging, however, because the amount defendant must pay depends on whether plaintiff received any income from other sources during that month. "Income," for purposes of determining how much support defendant must provide to maintain plaintiff's income at the federal poverty level, includes not only wages and cash payments to plaintiff, but also property, services, gifts, or educational grants received by plaintiff (unless she paid fair market value for those items). "Income" also includes constructively-received income, such as payments to third-

parties on plaintiff's behalf that plaintiff would otherwise have had to pay directly.[5] Unfortunately, plaintiff has refused to acknowledge and credit payments or other forms of income received from defendant and/or third parties and has not been forthcoming regarding wages earned during the relevant period. The Court has little confidence that, left to her own devices, plaintiff would voluntarily disclose a new job, receipt of food stamps or other public assistance, gifts from family or friends, educational grants, *etc.*, that would reduce, dollar-for-dollar, the amount defendant would have to pay. The Court will, therefore, craft an order designed to ensure that plaintiff gets the amounts to which she is entitled and that defendant pays only what is contractually required.

IT IS HEREBY ORDERED THAT:

1. Plaintiff is entitled to specific performance of the Form I-864 obligations. Defendant is and remains obligated to provide plaintiff whatever support is necessary to maintain plaintiff at an income that is not less than 100% of the federal poverty guidelines.

2. Plaintiff shall, within fourteen days of the date of this Order, file a declaration signed under penalty of perjury[6] stating the amounts and sources of all income she has received since the jury returned its verdict on July 16, 2019, including payments from defendant in response to the verdict. "Income" is defined broadly, as stated in the jury instructions and this Order. The Court will utilize the information provided by plaintiff to calculate past due amounts and to enter a monetary judgment in this case

---

[5] "Income" does not, however, include any loans that plaintiff will have to pay back, such as cash advances on a credit card or student loans.

[6] Section 1746 of Title 28 sets forth the language to be included in the declarations required under this Order.

DECISION REGARDING EQUITABLE
CLAIM FOR SPECIFIC PERFORMANCE - 4

3. Defendant shall, within fourteen days of the date of this Order, file a statement indicating the address at which he would like to receive communications from plaintiff.

4. On the first day of the month following entry of judgment, plaintiff shall send to defendant, by first-class mail, a declaration signed under penalty of perjury stating (a) the amounts and sources of all income she received since she filed the statement described in paragraph 2 and (b) the address at which she would like to receive payment of any funds due under Form I-864. Defendant shall, on or before the 20th day of the month following entry of judgment, send to plaintiff, by first-class mail, a check for any amounts due for the previous month under Form I-864. The amount due shall be calculated as 1/12 of the 2019 federal poverty guideline amount ($12,490 ÷ 12 = $1,041) minus any income plaintiff received since she filed the statement described in paragraph 2.

5. On the first day of each succeeding month, plaintiff shall send to defendant, by first-class mail, a declaration signed under penalty of perjury, stating (a) the amounts and sources of all income she received during the previous month and (b) whether she has become a U.S. citizen, is no longer a lawful permanent resident and has departed the U.S., or has been granted adjustment of status based on a new affidavit of support. Unless one of the terminating events has occurred, defendant shall, on or before the 20th day of the month, send to plaintiff, by first-class mail, a check for any amounts due for the previous month under Form I-864. The amount due shall be calculated as 1/12 the federal poverty guideline amount for that year minus any income plaintiff received in the previous month.

6. Failure to postmark an income declaration on or before the 1st of the month does not excuse defendant's obligation to pay amounts due, but it extends the time in which payment

must be made by an equal number of days.

7. The parties shall provide written notice of any change of address.

8. Plaintiff shall mail to defendant, by first-class mail, a copy of any individual tax return she files for 2019 and each succeeding year (or any business tax return filed for a privately-held business in which plaintiff has an ownership interest) within seven days of the date the return is filed with the federal, state, or local government. This obligation continues unless and until one of the events that terminates the I-864 occurs.

Dated this 4th day of November, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge